UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Ronda Harrity,

        Plaintiff,

v.                                                           Civ. No. 07-3958 (JNE/JJG)
                                                              ORDER

Target Corporation,

        Defendant.

Plaintiff Ronda Harrity brings this action against Defendant Target Corporation pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461 (2000). Plaintiff seeks reimbursement under a medical insurance policy (Plan) sponsored and administered by Target for medical expenses related to jawbone surgery for her son. The case is before the Court on cross motions for summary judgment. For the reasons stated below, the Court grants Target's motion and denies Plaintiff's motion.

## I.    BACKGROUND

In 2007, Plaintiff's son underwent orthognathic surgery, a type of jawbone surgery, to correct lifelong malformations of his jaw, namely mandibular hyperplasia and maxillary hypoplasia. These malformations had affected his ability to eat, breathe, and speak, and his doctors believed that his condition would likely have deteriorated in the absence of surgery.

Plaintiff and her son are both insured by the Plan. In February 2007, Plaintiff submitted a request for coverage to United Healthcare (UHC), the third-party administrator of the Plan, for her son's surgery and related treatment. On March 7, 2007, UHC denied Plaintiff's request, citing the following language from the Summary Plan Description:

> Expenses Not Covered: Jawbone Surgery . . . diagnosis or treatment of the jawbones, including orthognathic surgery (procedure to correct underbite or overbite), except as treatment of obstructive sleep apnea; and . . . upper and lower

1

jawbone surgery, except as required for direct treatment of acute traumatic injury, tumor or cancer.

Plaintiff appealed, and UHC upheld the denial of coverage in a letter dated April 4, 2007. In the letter, UHC again indicated that denial of coverage was appropriate because orthognathic surgery is specifically listed as an expense not covered.

In accordance with the terms of the Plan, Plaintiff appealed UHC's decision to Target. In a letter dated April 27, 2007, Target acknowledged receipt of various letters and materials submitted by Plaintiff to support her appeal and denied Plaintiff's appeal. The letter stated that orthognathic surgery was not covered by the Plan regardless of whether such surgery was "medically necessary," and Target enclosed the pages of the Summary Plan Description that contain the section entitled "*Expenses Not Covered*," which was referenced in the first two letters denying coverage to Plaintiff.

In a letter dated May 30, 2007, Plaintiff asked Target to reconsider. In a letter dated June 13, 2007, Target rejected Plaintiff's request, noting that the Plan did not provide for another appeal and that the appeal process had concluded. Plaintiff filed the present lawsuit on September 12, 2007, seeking to recover more than $50,000 in medical expenses, plus interest and legal fees.

## II. DISCUSSION

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies its

burden, the party opposing the motion must respond by submitting evidentiary materials that "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

When, as in this case, a plaintiff seeks review of denial of benefits under a plan that grants discretionary authority to the plan administrator to determine benefit eligibility, a district court normally applies an abuse of discretion standard. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Wakkinen v. UNUM Life Ins. Co.*, 531 F.3d 575, 580 (8th Cir. 2008). However, even when a plan administrator is granted such discretionary authority, de novo review is appropriate if "the plan administrator's decision was made without reflection or judgment, such that it was the product of an arbitrary decision or the plan administrator's whim." *Parkman v. Prudential Ins. Co.*, 439 F.3d 767, 772 n.5 (8th Cir. 2006) (quotation marks omitted).

Plaintiff argues that de novo review is appropriate because the denial of her claim for benefits was so perfunctory that it fails to constitute actual exercise of the discretion granted to UHC and Target.[1] The record in this case establishes that denial of benefits by UHC and Target constitutes actual exercise of their discretion. UHC and Target, for example, explained their decisions regarding denial of coverage with reference to relevant portions of Plan documents. *Cf. id.* (indicating that review for abuse of discretion is appropriate unless a court has "a total lack of faith in the integrity of the decision making process" (quotation marks omitted)); *Morgan v. Contractors, Laborers, Teamsters & Eng'rs Pension Plan*, 287 F.3d 716, 723 (8th Cir. 2002)

---

[1] In their various memoranda, both parties discuss UHC's actions as if they may be imputed to Target.

3

(concluding that de novo review was appropriate where the evidence was produced that suggested the "decision was not a product of proper judgment and reflection based upon [the] evidence"); *McGarrah v. Hartford Life Ins. Co.*, 234 F.3d 1026, 1031 (8th Cir. 2000) ("[W]here the trustee never offers a written decision, so that the applicant and the court cannot properly review the basis for the decision; or where procedural irregularities are so egregious that the court has a total lack of faith in the integrity of the decision making process, a court may infer that the trustee did not exercise judgment when rendering the decision." (quotation marks omitted)).

Plaintiff further asserts that a de novo standard should apply because neither Target nor UHC has specifically considered the arguments and materials submitted by Plaintiff in her May 2007 letter, after denial of Plaintiff's second appeal and conclusion of the administrative appeal process. However, Plaintiff is not entitled to extend the process for appealing denial of benefits indefinitely. *See Rittenhouse v. UnitedHealth Group Long Term Disability Ins. Plan*, 476 F.3d 626, 631 (8th Cir. 2007). The fact that Target did not issue a new ruling addressing Plaintiff's late-submitted materials does not entitle Plaintiff to a de novo standard of review. *See id*. at 630-31 (reviewing for abuse of discretion where new information was submitted following a final ruling on the plaintiff's appeal by the plan administrator); *Cash v. Wal-Mart Group Health Plan*, 107 F.3d 637, 641-42 (8th Cir. 1997) (indicating that review for abuse of discretion was appropriate despite submission of new evidence after completion of the administrative appeal process and noting that district courts should not become "substitute plan administrators").[2] Accordingly, the Court concludes that review for abuse of discretion is appropriate.

---

[2] However, because the materials submitted by Plaintiff after conclusion of the appeals process deal with interpretation of Plan provisions themselves and because they present no significant new factual material, the Court considers Plaintiff's late submissions. *Cf.*

When reviewing for abuse of discretion, a court must uphold the plan administrator's decision if it was reasonable, that is, if "a reasonable person could have—not would have—reached a similar decision." *Wakkinen*, 531 F.3d at 583. Factors relevant to whether a plan administrator's decision is reasonable include:

> whether (1) the interpretation is consistent with the goals of the Plan, (2) the interpretation renders any language in the Plan meaningless or internally inconsistent, (3) the interpretation conflicts with the substantive or procedural requirements of ERISA, (4) the plan administrator has interpreted the words at issue consistently, and (5) the interpretation is contrary to the clear language of the Plan.

*Tillery v. Hoffman Enclosures, Inc.*, 280 F.3d 1192, 1199 (8th Cir. 2002). In this case, the Court concludes that UHC and Target acted reasonably when they denied Plaintiff's claim related to her son's surgery.

The Plan provides benefits for "Covered Health Services." "Covered Health Services" are defined as:

> those health services and supplies that are:
> - provided for the purpose of preventing, diagnosing or treating Sickness, Injury, Mental Illness, substance abuse, or their symptoms;
> - included in *Plan Highlights* and *Covered Health Services*[;]
> - not identified in *Expenses Not Covered*.

Plaintiff argues that an expense is covered if it meets any one of these three criteria. Because it would render certain Plan provisions superfluous, such an interpretation is untenable. *See Harris v. Epoch Group, L.C.*, 357 F.3d 822, 825 (8th Cir. 2004) ("The federal courts apply federal common law rules of contract interpretation to discern the meaning of the terms in an ERISA

---

*Rittenhouse*, 476 F.3d at 630 (indicating that a court may consider a new argument when "it is purely legal and requires no additional factual development" (quotation marks omitted)). *But see id.* at 630-31 (indicating that a district court should ordinarily not consider materials submitted after a final decision by a plan administrator); *Cash*, 107 F.3d at 641 ("[R]eview under the deferential standard is limited to evidence that was before the [plan administrator]." (quotation marks omitted))

5

plan, and under federal common law a contract should be interpreted as to give meaning to all of its terms—presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous." (citation and quotation marks omitted)). For example, under Plaintiff's suggested interpretation, any expense not excluded under *Expenses Not Covered* would necessarily be covered, rendering much of the positive recitation of covered expenses in the *Plan Highlights* and *Covered Health Services* sections unnecessary. Similarly, under the interpretation urged by Plaintiff, inclusion of an expense in the *Plan Highlights* or *Covered Health Services* section would negate any exclusion of that expense in the *Expenses Not Covered* section. There is nothing unusual or ambiguous about exclusion of a specific procedure that would otherwise fall into a general description of a broad category of covered expenses. *See, e.g.*, *Manny v. Central States, Se. & Sw. Areas Pension & Health & Welfare Funds*, 388 F.3d 241, 245-46 (7th Cir. 2004); *Tillery*, 280 F.3d at 1199-1200. Accordingly, Target reasonably interpreted the Plan to require that all three criteria must be met before an expense will be covered.

Plaintiff argues that her son's orthognathic surgery qualifies for coverage under the broad provisions in the Plan's *Covered Health Services* section regarding coverage for reconstructive procedures and preventative care. Assuming that this is the case, the Court concludes that the Plan's language reasonably supports denial of coverage because orthognathic surgery is specifically excluded from coverage by the Plan's *Expenses Not Covered* section. The *Expenses Not Covered* section, under the heading "**Dental**," excludes from coverage the following:

> any confinement, treatment or service which is for removal of impacted teeth, dental implants, orthognathic surgery (surgery to correct a problem of the jaw bones such as maxillary or mandibular osteomy) and any treatment or service by a dentist or dental surgeon except those specified as Covered Health Services.

6

Plaintiff acknowledges this exclusion for orthognathic surgery but argues that the phrase "except those specified as Covered Health Services" applies to resurrect coverage for orthognathic surgery, as orthognathic surgery is "specified" as a covered health service by the provisions regarding reconstructive or preventative care. This interpretation, however, would leave the specific exclusion for orthognathic surgery without any operative effect—the surgery would be excluded whenever it is not covered. Instead, it is much more likely that the phrase singled out by Plaintiff modifies the words that immediately precede it—"any treatment or service by a dental surgeon." Some limited dental expenses are specifically covered by the Plan. In the absence of an exclusion for non-specified dental expenses, broader coverage provisions in the *Covered Health Services* section, such as provisions covering reconstructive or preventative costs, could be construed to cover a vast array of dental expenses, rendering the specific statement of coverage for certain dental expenses irrelevant.

Moreover, as noted by UHC and Target in their letters to Plaintiff, the Plan's *Expenses Not Covered* section, under the heading "**Jawbone Surgery**," reiterates the exclusion for orthognathic surgery more specifically:

- diagnosis or treatment of the jawbones, including orthognathic surgery (procedure to correct underbite or overbite), except as treatment of obstructive sleep apnea; and
- upper and lower jawbone surgery, except as required for direct treatment of acute traumatic injury, tumor or cancer.

This exclusion for orthognathic and jawbone surgery indicates that such surgery is not excluded from coverage when it is undertaken to treat sleep apnea, traumatic injury, a tumor, or cancer. The surgery of Plaintiff's son was not undertaken for any of those reasons. While the surgery may have prevented the possible onset of sleep apnea, the record does not suggest that the procedure was performed for purposes of treatment of that condition. Were prevention covered

as well, the Plan could have stated so, as it did, for example, in defining covered health expenses to include services and supplies "[p]rovided for the purpose of preventing, diagnosing or treating" health conditions.³

Finally, to the extent that Plaintiff argues that her son's surgery should be covered by the Plan because the surgery was medically necessary, the argument is without merit. The *Expenses Not Covered* section specifically states that "[t]he Plan does not pay Benefits for any of the following services, treatments or supplies even if they . . . are the only available treatment for your condition." In addition, the record indicates that denial of coverage for the surgery of Plaintiff's son was consistent with UHC's prior interpretation of similar language, and application of the exclusion is not inconsistent with either ERISA or the Plan's purposes, *see Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 823 (2003); *Tillery*, 280 F.3d at 1199-1200. Moreover, while the fact that Target may be considered to operate under a conflict of interest because it both evaluates claims for benefits and pays benefit claims may "be weighed as a factor in determining whether there is an abuse of discretion," it is insufficient to justify a conclusion that Target abused that discretion, in part because any conflict was mitigated by UHC's role as third-party administrator. *See Wakkinen*, 531 F.3d at 581 (quotation marks omitted). Accordingly, the conclusions of Target and UHC that coverage for the orthognathic surgery was precluded by exclusions in the Plan's *Expenses Not Covered* section were reasonable.

---

³ Similarly, the Plan, in the *Covered Health Services* section, indicates that "surgical treatment of TMJD (temporomandibular joint disorder)" qualifies as a covered expense. Even if the specific exclusions for orthognathic surgery did not apply, the parties do not dispute that the surgery was intended to prevent rather than treat TMJD.

8

## III.   CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Plaintiff's Motion for Summary Judgment [Docket No. 12] is DENIED.

2. Defendant's motion for summary judgment [Docket No. 16] is GRANTED.

3. The Complaint [Docket No. 1] is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  October 6, 2008

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge